UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
**FILED**
NOV 2 1 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-277-JMH

JEFFREY KYLE MARSH                      PLAINTIFF

VS:        **<u>MEMORANDUM OPINION AND ORDER</u>**

RON PRICE, ET AL.                        DEFENDANTS

Jeffery Kyle Marsh, the *pro se* plaintiff, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983 [Record No. 1]. The plaintiff is confined at the Kentucky State Reformatory ("KSR") in LaGrange, Kentucky. He has also filed a motion to proceed *in forma pauperis* [Record No. 2], which will be addressed by a separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff.

*See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff asserts two basic claims. First, he alleges that the prison officials at the Eastern Kentucky Correctional Complex ("EKCC") in LaGrange, Kentucky, failed to install necessary safety features, or guards, on a table saw which the plaintiff operated when he was confined there. He alleges that the absence of this safety feature caused him to sustain a serious bodily injury (the amputation of parts of three fingers). He alleges that the injury could have been avoided had the table saw been equipped with a guard. The plaintiff alleges on page 7(B) of his complaint that the failure to install the guard feature constituted gross negligence on the part of prison staff. To the extent the claim challenges the conditions of confinement, it falls under the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States Constitution.[1]

The plaintiff asserts a second set of claims under the Eighth Amendment. Plaintiff alleges that when he returned to prison after surgery, the medical staff denied him necessary pain medication and other necessary medical treatments on numerous occasions throughout the summer of 2004. He alleges that the continued denial of proper medical care constituted deliberate indifference to his

---

[1]

The plaintiff generally alleges that his rights under the First, Fifth, and Fourteenth Amendments were violated by the defendants' actions [Complaint, p. 7(A)-(c)]. On review of the entire submission, however, the Court determines that the plaintiff's challenges to the conditions of his confinement, and his challenges to the adequacy of the medical treatment he received, fall only under the Eighth Amendment. The plaintiff does not allege any facts which constitute the denial of due process of law or equal protection of the law under the Fourteenth Amendment. The Fifth Amendment would apply only to a due process or equal protection claim against persons acting under color of *federal* law, not state law. The plaintiff has not named as a defendant any person acting under color of federal law. Finally, the plaintiff does not assert any claim cognizable under the First Amendment.

2

serious medical needs. He claims that as a result of this indifference to his serious medical needs, he was subject to additional harm in the form of possible infection and unnecessary pain and suffering.

## RELIEF REQUESTED

The plaintiff seeks millions of dollars in monetary damages. He also seeks injunctive relief in the form of installation of safety features on all machinery and an order requiring inmates to complete a safety course.

## NAMED DEFENDANTS

The named defendants are: (1) Ron Price, Prison Industries Shop Supervisor at the EKCC; (2) Raleigh Jenkins; (3) Bobby White; (4) Raymond Lumpkin, employee of the Prison Industries Shop at the KSR; (5) Terry Gaunce; (6) Jane Doe; (7) John Doe; (8) Dr. Khyatt, physician at the KSR; (9) Judy Faulkner, nurse at the KSR; (10) Nurse Payne, nurse at the KSR; (11) Lt. Roberts, correctional officer at the KSR; (12) "Ms. McDaniels," whom the plaintiff identifies as a nurse at the KSR; and (13) "Ms. McGlassin," whom the plaintiff identifies as a nurse at the KSR.[2]

## ALLEGATIONS OF THE COMPLAINT

The plaintiff filed a preprinted §1983 complaint form generally used by prisoners. He supplied handwritten answers to the questions in the complaint. In addition to the preprinted submission, he attached twenty-three (23) pages of single-spaced, handwritten supplementary

---

[2] The complaint reveals that there are actually thirteen named defendants. The docket sheet lists only six named defendants.

information.[3] The Court has summarized the detailed factual allegations set forth in the complaint.

### 1. Eighth Amendment Claim Relating to Unsafe/Defective Equipment

In July, 2004, the plaintiff was confined in the EKCC and was employed by the Prison Industries furniture shop, where he operated a table saw. On July 7, 2004, while working in the furniture shop, a thick, eight-foot-long piece of wood fell off the table where the plaintiff was operating the table saw. The plaintiff and two other inmate employees attempted to catch the wood piece and, in so doing, the plaintiff's fingers were eventually caught by the blade of the table saw. Three of the plaintiff's fingers were severed during the accident. The plaintiff underwent eight hours of extended skin graft procedures in which the severed portions of his fingers were surgically reconnected. The plaintiff states that the doctors have informed him that although the fingers have been reconnected, he will not be able to bend his fingers as he did before.

The plaintiff alleges that prior to the accident on July 7, 2004, he had lodged verbal complaints about the absence of a saw blade guard with Ron Price, the Prison Industries shop advisor. Plaintiff alleges that Price told him that if he (plaintiff) did not want to run the saw, he (plaintiff) could get a job someplace else.

### 2. Denied Medical Treatment

In his twenty-three-page handwritten supplement, the plaintiff sets forth a detailed account of what he describes as ongoing and deliberate indifference to his serious medical needs upon his

---

[3] Most of the handwritten pages of the complaint were not numbered in any sequence. The plaintiff wrote on the back of some handwritten pages, some of which were filed upside down.

4

return to prison following his hand surgery. The supplement is not clear as to *where* the plaintiff was confined when the defendants allegedly exhibited deliberate indifference to his serious medical needs. The plaintiff clearly states that his hand injury occurred at the EKCC on July 7, 2004. He states that he was in the hospital for approximately five days thereafter. His first complaint about the treatment he received from prison medical staff was on July 25, 2004. The plaintiff made no mention of a transfer from the EKCC to the KSR at any time between July 7, 2004, and July 25, 2004. However, the plaintiff identified the correctional officers, doctors, and nurses involved in the allegedly deficient medical treatment as being employees of the KSR.[4] Based upon the material provided, it appears to the Court that the episodes of alleged deliberate indifference to the plaintiff's medical condition, beginning on July 25, 2004, occurred at the KSR.[5]

## July 25, 2004 Incident

The plaintiff alleges that on July 25, 2004, his hand was causing him severe pain and that he begged for increased dosages of pain medicine. He claims that Dr. Khyatt refused to authorize the prison staff to give him pain medicine at as many intervals as they could have. He alleges that Nurse Pierce informed him that Dr. Khyatt reduces the amount of pain medicine for inmates who complain. According to the plaintiff, Dr. Khyatt refused to authorize him to receive an increased amount of pain medicine because he (plaintiff) suffers from Hepatitis C, and the medication would exacerbate the Hepatitis C condition. He alleges that the nurses demonstrated hostility toward him when he

---

[4]

The plaintiff identified the following defendants as being employees of the KSR: Dr. Khyatt, physician; (9) Judy Faulkner, nurse; (10) Nurse Payne, nurse; (11) Lt. Roberts, correctional officer; (12) "Ms. McDaniels," nurse; and (13) "Ms. McGlassin," nurse.

[5]

At some point the plaintiff was obviously transferred to the KSR, because that is where he is currently confined.

5

begged for more pain medicine. He alleged that Nurse Faulkner refused to give him his pain medicine at the exact time when he demanded it and complained that she was reading the newspaper instead of helping him.

### July 28, 2004 Incident

The plaintiff alleges that on this date, while he was receiving physical therapy for his hand, the therapist informed him the surgeon had ordered in his release instruction that the plaintiff's hand should be washed every day and that the dressing should be changed. The plaintiff alleges that until that time, he had been unaware of that order and complained that his hand had not been washed since July 21, 2004. He alleges that after July 28, 2004, he requested a washing and dressing change but that the nurses refused to do it, claiming they were too busy. The plaintiff alleges that the nurses chose instead to eat, talk, and read the newspaper.

### July 30, 31, and August 1, 2004 Incidents

The plaintiff alleges that on July 30, 2004, he was taken to UK Hospital to receive an antibiotic drip because his hand was not healing properly. He alleges that Dr. Rinker, the physician at UK who reconstructed his hand, informed him that if the hand did not improve within 24 hours, more surgery would be required. The plaintiff states that when KSR Officer Myers phoned the prison, he (Myers) was told that the KSR would not allow him to be admitted for treatment. The prison decided that the plaintiff could receive an IV drip in the medical facility in the KSR. Plaintiff alleges that although Dr. Rinker protested the prison's decision, he told the plaintiff that he could not operate on his hand because the prison would not pay for the services. The plaintiff alleges that he was returned to the KSR, where he received no follow-up medical care until the following day.

6

The plaintiff states that on July 31, 2004, three different nurses over a twenty-three-hour period unsuccessfully attempted to inject the IV drip in his arm. He alleges that this was a painful process which resulted in several blown blood vessels. He further complains that Nurse Pierce used excessive force when she tried to inject the IV into his arm, and unnecessarily caused him pain. He states that she was verbally abusive to him and attributed the other nurses' inability to inject the IV to the plaintiff's refusal to sit still. The plaintiff alleges that on August 1, 2004, he was finally transported to UK Hospital, where the nurse was able to inject the IV with no problem.

### August 3, 2004 Incident

The plaintiff alleges that Nurse Pierce was again verbally abusive to him when she was attempting to insert an IV in the his arm. He alleges that for no reason she threatened to have him locked up in the "hole," claiming that he needed to shut his mouth. He states that he tried to apologize to Nurse Pierce even though he did nothing to deserve her hostility.

### August 6, 2004 Incident

The plaintiff states that on this date, another inmate confined to a wheelchair began picking a fight with him. He states that the wheelchair-bound inmate came after him in his chair and was waving his leg-rest stick at him. Plaintiff states that although he tried to get the officers to assist, Lt. Roberts told him he (plaintiff) was nothing but trouble and blamed him for the altercation. They wanted to put him in segregation but, because the plaintiff had an IV in him, they did not do so.

### August 7, 2004 Incident

The plaintiff alleges that on this date, another inmate named Gary Pough took his newspaper out of his hands while he (plaintiff) was sleeping in his cell. Another inmate named Winthrow

7

became involved in the argument. The plaintiff alleges that Nurse McGlassin wrongfully blamed him for the altercation and accused the plaintiff of having refused to take his medications and argued with him about his pain medication on the preceding day, August 5, 2004. Plaintiff alleges that Nurse McGlassin ordered Officer Phillips to write up a disciplinary infraction against him. He states that Officer Phillips refused to do so.

### August 10, 2004 Incident

The plaintiff alleges that on this date, Nurse Pierce interrupted him while he was eating in order to hook him up to his IV. He claims that they had an unpleasant verbal exchange and that she threatened to have him put in the hole. He states that he perceived that she was trying to provoke an angry reaction from him. He states that Nurse Pierce tried to get the correctional officers to write up an infraction against him and have him put in the hole, but that they refused to do so.

### August 15, 2004 Incident

Plaintiff alleges that on this date, he told Dr. Khyatt that he had not been administered prescribed pain medication. He alleges that the nurse meddled in the conversation and blamed the failure on the fact that a bad storm had prevented delivery of the medicine. The plaintiff disputed that claim in front of the doctor. He alleges that Dr. Khyatt ordered him to receive more medicine but that the nurses refused to administer it to him. He states that sometime later, Nurse Hopper finally gave him his pain medicine.

The plaintiff concluded his lengthy narrative by stating that the nursing staff, in particular Nurse Pierce, engaged in sadistic behavior toward him on a continuing basis. He alleges that their attitude toward him was hostile and that they denied him pain medicine when he needed it.

## DISCUSSION

### 1. Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions (this includes any other incident to prison life, such as excessive force) to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement).

> Since April 26, 1996, the effective date of the PLRA, 42 U.S.C. §1997e(a), has provided that:
>
> No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In order to meet the exhaustion requirement of the PLRA, a prisoner must either attach a copy of his prison grievance forms to the complaint or state the nature of the remedies pursued and the result of each process. *See Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir.2000); *Jones v. Bock*, 2005 WL 1400205, *1 (6th Cir.(Mich. June 15, 2005) (Not selected for publication in the Federal Reporter). "Pursuant to this circuit's opinion in *Jones Bey v. Johnson*, 407 F.3d 801, 805 (6th Cir.2005), it is now clear that total exhaustion all of claims is required in order for a prisoner to bring a civil rights action in this court." *Williams v. Overton*, 2005 WL 1513102, *3 (6th Cir.(Mich.) June 22, 2005) (Despite Williams' exhaustion of an accommodation claim, *Jones Bey* required dismissal of the entire action due to Williams' failure to exhaust his medical claims).

9

The Sixth Circuit has also held that it is contrary to Congress's intent, in enacting the PLRA, to allow inmates to bypass the exhaustion requirement by waiting until their administrative remedies are time-barred. *Wright v. Morris*, 111 F.3d 414 (6th Cir.), *cert. denied*, 118 S. Ct. 263 (1997).[6] Unless the record demonstrates that the requirements of §1997e(a) have been met, the District Court is to dismiss without prejudice. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 119 S. Ct. 88 (1998). The burden is on the plaintiff to demonstrate exhaustion of his administrative remedies *prior* to filing the lawsuit. *Id*.

### A. Failure to Install Safety Device

The instant plaintiff has alleged that the EKCC was grossly negligent in failing to install a safety guard on the saw blade in the prison furniture shop. The preprinted complaint form asked the plaintiff to explain what if any efforts he took to administratively exhaust "the facts relating to each claim set forth in this complaint in the prisoner grievance procedure" [Record No. 1, Complaint Form, p.3, § III (B)]. The plaintiff's response was that he had presented a grievance to Walter Terry, the Grievance Aide, but that it was denied "because I was in the hospital / 5 day time limit expired per C. P.P."[7] [*Id.*, § III (C)]

---

[6]

Exhaustion is not merely to provide a record for the ease of the court. As stated by the Third Circuit in *Lyons v. United States Marshals*, 840 F.2d 202 (3rd Cir. 1988):

> The exhaustion requirement promotes: (1) deference to Congress's decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.

*Id.* at 205.

[7]

The Kentucky Department of Corrections promulgated a set of administrative regulations at 501 KAR 6:010, which govern prison grievance procedures. They are referred to as "Corrections Policies and Procedures" ("CPP"). The CPP which addresses inmate grievances is found in Policy Number 14.6.

10

The plaintiff did not attach for the Court's review a copy of the grievance which he alleges the Grievance Aide denied.[8] According to the provisions of the *Inmate Grievance Process*, §I (1) of CPP Policy Number 14.6, a prisoner at a state correctional institution must informally attempt to grieve a claim with the Grievance Aide, the Grievance Coordinator, the department head or institutional staff. If the attempt at informal resolution fails, he must seek a hearing before the Grievance Committee [*Id.*, §(2)]. The Committee's decision must be forwarded to the warden, who is responsible for making a final written decision [*Id.*, §2(c)-(d)]. A prisoner who is not satisfied with the warden's final decision may appeal that decision to the Commissioner of Corrections by using a specific form described in §3(a) of the *Inmate Grievance Process*.

The instant plaintiff does not allege that upon the denial of his claim by the Grievance Aide, he sought a hearing, filed an appeal to the Warden of the EKCC, or after that, appealed to the Commissioner of Corrections. *See* §3(a) of the *Inmate Grievance Process*. The plaintiff does not indicate that he undertook any of these steps. Therefore, he did not fully complete the CPP's grievance process with regard to his claim that the saw blade lacked a necessary safety feature.

The plaintiff is correct that §(1)(f) of the *Inmate Grievance Process* states that a grievance about a specific *incident* shall be filed within five working days after the incident occurs. However, the plaintiff's reliance on that section is misplaced for two reasons.

First, the plaintiff states in the complaint that before his accident on July 7, 2004, he had previously complained to Defendant Ron Price, the shop supervisor, that the saw blade should have

---

[8] It is not even clear to the Court whether this attempted grievance related to the saw blade claim or the claims of medical indifference. The plaintiff wrote the same statement in two places on the preprinted complaint form, pages 4 and 6. He appears to indicate that Walter Terry was a Grievance Aide at the KSR, not the EKCC. However, the complaint involving the saw blade safety feature arose at the EKCC.

been equipped with a safety feature. He states that Price told the plaintiff he could quit working in the shop if he was dissatisfied with the equipment. The time for the plaintiff to have filed a grievance at a higher level within the EKCC was five days *after that conversation with Price*, when he first became aware of the alleged problem and of Price's unwillingness to correct it.

Second, the Court does not construe a complaint about the safety of a piece of equipment as an "incident" as set forth in §(1)(f) of the *Inmate Grievance Process* . Rather, the Court construes the complaint as one relating to the conditions of confinement. The Court views an "incident" as a specific *event* involving a specific set of parties and facts. An "incident" would not describe the general status of a condition. The *Oxford English Dictionary* defines an "incident" as follows:

1. (a) Something that occurs casually in the course of, or in connection with, something else, of which it constitutes no essential part; an event of accessory or subordinate character;

1. (b) An occurrence or event, sometimes comparatively trivial in itself, which precipitates or could precipitate political unrest, open warfare, etc. *Also, a particular episode* (air-raid, skirmish, etc.) in war; an unpleasant or violent argument, a fracas.

2. (a) An occurrence or event *viewed as a separate circumstance.*

Oxford English Dictionary (Emphasis Added)

Accordingly, the five-day time limitation set forth in §(1)(f) of the *Inmate Grievance Process* does not apply to the claim concerning the EKCC's alleged failure to equip the furniture shop's saw blade with a safety guard.

Even assuming that the plaintiff had exhausted the claim, it would warrant dismissal for another reason. The plaintiff alleges that the EKCC was "grossly negligent" in failing to ensure the saw blade had adequate safety features. Neither simple nor gross negligence on the part of state officials is sufficient to support a finding of a constitutional violation under 42 U.S.C. §1983.

12

*Collins v. City of Harker Heights*, 503 U.S. 115, 112 S. Ct. 1061 (1992); *see also Gazette v. City of Pontiac*, 41 F.3d 1061, 1066 (6th Cir.1994) (Even a showing of gross negligence will not suffice to meet a Plaintiff's burden in these types of cases [§1983]); *Falls v. Nesbitt*, 966 F.2d 375 (8th Cir. 1992) (inmate was required to show something more than mere advertence or negligence; he had to show that the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates). Accordingly, because the plaintiff's claims regarding the safety feature on the saw blade sound in negligence, they must be dismissed.

### B. Claims of Denied/Delayed Medical Treatment

The plaintiff's claims that he was denied treatment on numerous occasions, and/or that the nursing staff at the KSR unnecessarily delayed his medical treatment, can be disposed of in short order. The plaintiff again states only that Grievance Aide Walter Terry denied his grievance because it was "past the five day deadline." [Complaint Form, p. 6, §III (f)(2)]

There is no evidence that the plaintiff took *any* of the steps, set forth in the *Inmate Grievance Process,* to grieve any of the several incidents of deliberate indifference to his serious medical needs which he alleges arose between July 25, 2004, and August 15, 2004. The plaintiff was required to have administratively exhausted *each* separate incident of alleged deliberate indifference to his medical needs. He neither alleged nor presented any documentation that he filed a grievance at any institutional level concerning *any* of these alleged incidents. While the Court could dismiss those claims without prejudice for failure to exhaust, the Court determines that the plaintiff's medical claims fail on the merits. Accordingly, the claims must be dismissed *with* prejudice.

### 1. Difference of Opinion Does Not Violate Eighth Amendment

In all instances the plaintiff described, it appears that he was not satisfied with the adequacy of the medical solutions offered to him. It is not that the plaintiff was not offered medical care so much as it is that the plaintiff did not prefer the kind of medical services that were offered. When a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.[9]

Eighth Amendment claims contain both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994); *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991). In order to state a valid claim under the Eighth Amendment regarding medical care, a prisoner must show both "deliberate indifference" and a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To substantiate an allegation of deliberate indifference, a prisoner must establish that the deprivation was sufficiently serious *and* that officials acted with a sufficiently culpable state of mind. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

---

[9]
There are numerous unpublished Sixth Circuit opinions which adopt *Westlake v. Lucas'* holding that where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which would sound in state tort law. *See Wilson v. Wilkinson*, 62 Fed. Appx. 590, 2003 WL 1795812 (6th Cir. (Ohio) April 1, 2003) (Not selected for publication in the Federal Reporter); *Wooley v. Campbell*, 63 Fed. Appx. 789, 2003 WL 1795708 (6th Cir. (Tenn.) March 27, 2003); *Wright v. Sapp*, 59 Fed. Appx. 799, 2003 WL 1465184 (6th Cir. (Ky.) March 17, 2003); and *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. (Ky.) January 30, 2003).

The objective component requires that the injury be serious, while the subjective component requires that the defendant act with deliberate indifference to the inmate's health or safety. *Farmer,* 511 U.S. at 834. The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S. Ct. 2392 (1981).

The subjective component requires the plaintiff to demonstrate that prison officials acted wantonly, with deliberate indifference to the plaintiff's serious medical needs. *Farmer v. Brennan,* 511 U.S. at 834. Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id.* at 835-36. Deliberate indifference has also been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea,* 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*). The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness. *Brooks v. Celeste,* 39 F.3d 125 (6th Cir. 1994).

The plaintiff has, at the most, set forth an argument over the sufficiency of the conservative course of medical treatment he received at the KSR. At best, the complaint described delays in receiving pain medicine or the injection of an IV, but in all circumstances the plaintiff received the needed treatment within a few hours' time. The plaintiff stated that there was a one-day's delay in the injection of the IV on July 31- August 1, 2004; however, he also stated that during this time the nursing staff made repeated attempts to inject the IV. They did not ignore him. The plaintiff received the IV injection at UK on August 1, 2004.

As for the plaintiff's complaint that Dr. Khyatt failed to administer as much pain medicine as the plaintiff would have liked on July 25, 2004, that claim lacks merit. The plaintiff stated that Dr. Khyatt's concern was that the pain medicine would aggravate his Hepatitis C condition. In *Simpson v. Ameji*, Lexington Civil Action No 02-CV-192, the undersigned addressed the same claim from a prisoner. The plaintiff, Simpson, had Hepatitis C and complained that Dr. Ameji promised him a prescription for methotrexate on January 15, 2002. The prescription never materialized.

Dr. Ameji advised Simpson not to take methotrexate because he had tested positive for hepatitis C, and the drug would not be compatible with the Hepatitis C. The Court determined that the plaintiff had not alleged a viable Eighth Amendment claim, merely because he disagreed with Dr. Ameji's decision about the medication, and dismissed the complaint.

On appeal, the Sixth Circuit affirmed, stating as follows:

> Moreover, Dr. Ameji's refusal to prescribe a medicine Simpson read about did not support an Eighth Amendment claim. Finally, Simpson's inability to obtain methotrexate in January 2002 did not show deliberate indifference on Dr. Ameji's part. Dr. Ameji used his medical judgment to conclude that Simpson should not take the drug because of his hepatitis C. Simpson's allegations did not show that the defendants deliberately ignored his medical needs. *See Estelle*, 429 U.S. at 104, 97 S. Ct. 285.

*Simpson v. Ameji*, 57 Fed. Appx. 238, 239 (Not selected for publication in the Federal Reporter. (6th Cir. (Ky.) January 30, 2003).

Under the facts as stated by the plaintiff, he has not established *deliberate* indifference to his various medical conditions, nor has he established *any* culpable state of mind of any of the named defendants. The plaintiff received the care to which he was entitled, although he may not have received it as quickly as he demanded it. Additionally, as stated in the *Simpson* opinion, a dispute over the adequacy of medical care rendered to a prisoner generally does not rise to the level of an

Eighth Amendment violation. *Westlake v. Lucas*, 537 F.2d at 860 n.5.[10] The plaintiff's medical allegations under the Eighth Amendment are dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. §1915(e)(2)(ii).

### 2. Verbal Abuse does Not Violate Eighth Amendment

The plaintiff alleges that the nurses were hostile, cruel, and verbally abusive to him. Allegations of mere verbal abuse and harassment do not rise to the level of a constitutional violation. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (*per curiam*); *Williams v. Bulthus*, 1999 WL 455247 (6th Cir. (Mich.)). *See also Northington v. Jackson, supra*, at 1524; *Collins v. Candy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff's idle threats to hang a prisoner did not give rise to a §1983 action). The Court finds that the plaintiff's allegations concerning the nursing staff's alleged hostile attitude and verbal abuse, even if not justified, does not create an Eighth Amendment violation.

Only if the comments approached being threats of terror of instant and unexpected death would the plaintiff possibly state a violation. *See Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986), wherein a guard drew weapon, made racial epithets and threatened to shoot black prisoner in back to prevent him from exercising free speech; and *Douglas v. Marino*, 684 F. Supp. 395 wherein a prison employee wielded kitchen knife and threatened to stab prisoner. The facts which the plaintiff alleges do not establish this type of conduct. The Court is required to dismiss the allegation of verbal abuse, for failure to state a claim upon which relief can be granted

---

[10] To the extent the plaintiff may be alleging mere negligence in his medical treatment, such a claim should be asserted in state court, not federal court. Federal courts do not have jurisdiction over actions regarding "duties that are analogous to those traditionally imposed by state tort law." *Lewellen v. Metropolitan Govt., et al.*, 34 F.3d 345, 351 (6th Cir. 1994) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citations omitted)).

## CONCLUSION

Accordingly, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants. The plaintiff's "Motion to Amend the Complaint" [Record No. 5] and "Motion for Issuance of Summons & Motion for Matter to be Heard" [Record No. 6] are **DENIED** as **MOOT**.

This 21st day of November, 2005.

*Joseph M. Hood*
JOSEPH M. HOOD, CHIEF JUDGE

Date of Entry and Service: